(69 App. Div. 502.)

### SPROULE v. DAVIES et al.

(Supreme Court, Appellate Division, Second Department. March 14, 1902.)

JUDICIAL SALE—RELIEF OF PURCHASER—REFEREE'S SALE—CONSENT OF PARTIES.
    Under Laws 1889, c. 167, § 1, providing that all sales of realty in Kings county under decree of any court, excepting where all the parties shall file a written stipulation consenting to sale by a referee, shall be made by the sheriff, a purchaser at a referee's sale will not be relieved on the ground that the sale was without the consent of infant defendants, where the court had jurisdiction of them, and no rights of theirs are alleged to have been prejudiced by the referee's appointment without the consent of their guardian ad litem, who was present at the sale, and made no objection; as the direction of the sale by the referee was a mere irregularity, not rendering the title doubtful.
    Hirschberg, J., dissenting.

Appeal from special term, Kings county.

Action by Mary Jane Sproule, as trustee under the will of James Sproule, deceased, against Sarah Davies and others. From an order denying the motion of Henry Jacobs to be relieved from the purchase at the referee's sale, he appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Edward T. Horwill, for appellant.
H. C. M. Ingraham, for respondent.

GOODRICH, P. J.   In an action for the foreclosure of a mortgage of real estate in the county of Kings, the court, in the final judgment, appointed a referee to sell the premises. The referee sold the premises to a purchaser who assigned his bid to Henry Jacobs, the appellant in this proceeding. The appellant refused to complete the sale on the ground that it had been conducted by a referee who had been appointed by the court without the consent of any of the parties to the action, including four infant defendants; and made a motion at special term to be relieved from the purchase, and to direct the referee to refund to him his deposit of 10 per cent. upon the bid, the auctioneer's fees, etc. The court denied the motion, and the assignee appeals.

It is well settled that the court will not compel a purchaser at a judicial sale to take a title which is not marketable, and in Shriver v. Schriver, 86 N. Y. 575, 584, it was said, "As a general rule, a title which is open to judicial doubt is not a marketable title." The question is whether this title is marketable. The moving papers alleged a refusal of two title companies in Brooklyn to pass such titles, but these allegations were denied in the affidavits made by the officers of these companies. It is true that the counsel for the appellant in an affidavit declares that in his opinion the title is defective, and the opposing affidavits present opinions that it is not defective; but these are merely opinions, and cannot be permitted to countervail the law. Chapter 167 of the Laws of 1889 provides as follows:

"Section 1. All sales of real estate made in the county of Kings under judgment or decree of any court, except sales in actions of partition, and where the sheriff of said county is a party, and excepting where all the parties to the suit, both those who do and those who do not appear, shall execute and file a written stipulation in due form consenting to a sale by a referee, shall be made by the sheriff of the said county of Kings."

The equity of redemption in the premises was in four infants, who were made defendants in the action, and for whom a guardian ad litem was appointed therein. The guardian appeared and answered, but no consent for the appointment of a referee was made or filed by him or by any of the parties to the suit. A copy of the judgment was served upon the guardian, and he attended the sale, and has made no objection thereto, or any application to the court to correct the matter before us. At common law the king was considered to have the care of all persons unable to care for themselves. This care was exercised by the court of chancery through a guardian appointed by it, whose functions were those of the tutor or curator of the civil law; the former of whom had charge of the maintenance and education of the infant, and the latter the care of his estate. Enc. Pl. & Prac. (2d Ed.) p. 890. This chancery jurisdiction was devolved upon our supreme court, which is the guardian of infants. It delegates to a guardian ad litem the duty of protecting the rights of the infant in a particular litigation. In Knickerbacker v. De Freest, 2 Paige, 304, it was said that, although it is the duty of the court to protect the rights of infants when they are properly before it, so that they may be seen and fairly understood, yet it is the special duty of the guardian ad litem of infant defendants to bring those rights directly under the consideration of the chancellor for his decision thereon. In the present case no such duty was performed by the guardian. In Christ v. Chetwood (City Ct. N. Y.) 20 N. Y. Supp. 841, it was said that:

"A guardian ad litem has no general authority to bind the infant or his estate, but the authority of such a guardian is limited to the action in which he is appointed and to the subject-matter thereof; and even here his authority is very limited indeed, for he is authorized to prosecute, not to settle. He can settle only by authority of the court. His admissions will not bind the infant party."

Certainly it is better practice for the guardian not to consent to the appointment of a specific referee, but to lay the matter before the court, and obtain its instructions. And yet it is difficult to see

what possible harm or injury came to the infants by reason of his failure to take one course or the other in the case at bar. A referee is a judicial officer, and must be presumed to have fulfilled his duty faithfully, until the contrary appears. We must assume that the court knew that there were infant defendants, that they owned the equity of redemption, that a guardian ad litem had been appointed for them, that the guardian had appeared and answered, that he had not consented to the sale by a referee, that the order for sale by a referee was made after careful consideration of the interests of the infants, and that their interests would be as well protected by a referee as by the sheriff. No prejudice to those interests is alleged in the moving papers.

The respondent contends that at most the provision of the statute is directory, not mandatory, and that the appointment of the referee is a mere irregularity, which may be disregarded; and in the light of authority we reach the conclusion that the judgment directing a sale by a referee is a mere irregularity, which does not invalidate the title proffered by the referee. In Abbott v. Curran, 98 N. Y. 665, upon the consents of all the parties appearing in the action, save one, who was an absentee, the court directed a sale in foreclosure to be made by a referee, although the statute of 1876, which was then in force, required that such sales should be made by the sheriff, unless all the parties appearing consented to a sale by a referee. The court, on a motion to compel a purchaser to complete his purchase, held that this was an irregularity which did not render the sale void, and that at most it was an error which could be corrected by any party to the record by application to the court, or by appeal from the judgment, but that a sale made under such circumstances was not invalid because made by a referee instead of a sheriff. Abbott v. Curran has been cited and followed in several cases, to three of which we advert. Bechstein v. Schultz, 45 Hun, 191, affirmed in 120 N. Y. 168, 24 N. E. 388, was an action to enforce specific performance of a contract for the sale of real estate. Objection was made that the title was defective, because in an action for the foreclosure of a mortgage there was an omission to publish a notice of an adjournment of the sale, as expressly required by section 1678 of the Code of Civil Procedure. It was held (Mr. Justice Willard Bartlett writing) that this omission was an irregularity which did not vitiate the sale. In the court of appeals, however, it was said that the irregularity was such as "might have afforded good ground for vacating and setting aside the sale made, but one which the parties were competent to waive, and which, from the subsequent proceedings, we must assume they did waive." Reed v. Reed, 46 Hun, 212, affirmed in 107 N. Y. 545, 14 N. E. 442, was an action for partition, brought by a tenant by the curtesy; and the court held that, although the plaintiff was not one of the parties who, by section 1538 of the Code of Civil Procedure, could institute an action in partition, yet, as all the parties in interest were before the court, the final judgment confirming the sale was conclusive, and legalized the sale. In this case there were infant defendants, and the court held that, if the objection to the plaintiff's right to sue had been raised by the guardian ad li-

tem of the infant defendants, it would have resulted in the dismissal of the action, and that, if any interests of the infants had been prejudiced by the failure of the guardian to raise the objection, their remedy would be against him and the sureties on his bond for omission of duty. In Woodhull v. Little, 102 N. Y. 165, 6 N. E. 266, it was held that the final order of confirmation of sale in a partition suit has the force and effect of a judgment, which binds the parties, where there is complete jurisdiction, whatever errors or irregularities may have preceded it, even where there has been an omission from the referee's advertisement of sale of a portion of the lands, where, upon motion made on due notice to all parties interested, the sale was confirmed, and that the irregularity was not a defect in the title. This case is especially important as it restates the doctrine of Abbott v. Curran.

The respondent contends also that, if the statute is mandatory, it is unconstitutional, as attempting to limit the jurisdiction of the supreme court, as recognized by article 6, § 3, Const. 1846, which was in force when the statute of 1876 was passed. By re--on of the views which we have already expressed, it is unnecessary to decide this question.

As no rights of the infants are alleged to have been prejudiced by the appointment of a referee without the consent of their guardian ad litem, who was present at the sale, and has made no objection thereto, and as the court had acquired jurisdiction of the infants, and may be assumed to have considered their interests when the order was made, we conclude that the direction for the sale of the premises by a referee was a mere irregularity, which does not render the title "open to judicial doubt."

For these reasons the order should be affirmed.

WOODWARD, J., concurs in result.   JENKS, J., takes no part.

WILLARD BARTLETT, J.   I concur in the result reached by Presiding Justice GOODRICH, but not wholly in the views expressed in his opinion. I think we are constrained by authority to hold that the action of the court at special term in disregarding the direction of the statute to appoint the sheriff of Kings county to sell in mortgage foreclosure suits, unless all the parties consent to the appointment of a referee, constitutes only an irregularity, for which the purchaser at the sale is not entitled, as matter of right, to be relieved from his purchase. In so deciding, however, I do not wish to be understood as holding that a judge who is called upon to render a judgment of foreclosure in Kings county may properly disregard the statute in question. The doctrine which distinguishes directory from mandatory statutes cannot be invoked, in advance of judicial action, to justify such action, where it ignores the provisions of a statute. It is the right of the people to have their directions complied with, as manifested through the lawmaking power, no less than to have their commands obeyed. Unless, therefore, this special statute relating to mortgage foreclosure sales in Kings county is unconstitutional, it is the duty of judges to comply with its requirements; and

wherever they fail to do so, and their action comes up directly for review, it is the duty of this court to reverse it.

I have no doubt that the statute is constitutional. The functions of the officer who sells under a decree in an ordinary mortgage foreclosure suit are not judicial, but administrative; and the legislature has not attempted in the least to detract from the "general jurisdiction in law and equity" conferred upon the supreme court by the constitution when it prescribes that mortgage foreclosure sales shall be conducted by the same officer who sells real estate under an execution.

Order affirmed, with $10 costs and disbursements.

HIRSCHBERG, J. (dissenting). I feel constrained in this case to vote for reversal. I agree with the majority of the court that the statute in question is constitutional, but I can find no decision to the effect that the action of the court at special term in disregarding the direction of the statute to appoint the sheriff of Kings county to sell constitutes only an irregularity. The record discloses that the disregard was intentional, and that it was based upon the decision of the court of appeals in Abbott v. Curran, 98 N. Y. 665, which case is cited as authority upon this point in the opinion of the Presiding Justice, and, I understand, is also the basis for the conclusion of Mr. Justice BARTLETT in his memorandum to the effect that we are constrained by authority to so hold. The case of Abbott v. Curran, supra, was decided before the present statute was passed. The statute in effect at that time was chapter 439 of the Laws of 1876, which provided that:

"All sales of real estate made in the county of Kings under judgment or decree of any court, except sales in action of partition and where the sheriff of said county is a party, except where both parties to a suit agree upon a referee to be appointed by the court, shall be made by the sheriff of the county of Kings."

In the case cited all the parties who appeared in the action had consented that the sale should be made by a referee. One party who did not appear failed to consent, and that party was an absentee. It is very apparent that the decision of the court of appeals rested upon the statement to be found in the memorandum of opinion at page 667 that "the court apparently held and decided that the consent of all those appearing under such circumstances was a compliance with the statute." The court added that, if this was error,—that is, if it was error to assume that the consent of all the parties to the suit who had appeared was a compliance with the statute,—such error did not render the appointment of the referee illegal, or the sale by him void. It is very plain that a decision to the effect that certain circumstances constituted a compliance with the statute is not authority for the proposition that a failure to comply in any degree is a mere irregularity. Moreover, the case of Abbott v. Curran was decided in 1885. The statute now under consideration was passed in 1889, and constitutes chapter 167 of the Laws of that year. It appears to have been enacted for the purpose of meeting the ruling in the case cited, for it provides (section 1) that:

"All sales of real estate made in the county of Kings under judgment or decree of any court, except sales in actions of partition, and where the sheriff of said county is a party, and excepting where all the parties to the suit, both those who do and who do not appear, shall execute and file a written stipulation in due form consenting to a sale by a referee, shall be made by the sheriff of the said county of Kings."

The difference between the two statutes is apparent at a glance, and consists in a change which expressly meets and negatives the ground upon which the case of Abbott v. Curran was decided.

Under the circumstances it seems to me only just that the risk and expense of an ultimate decision that the title is good should not be cast upon the purchaser.